RICHARD A. ZAUN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent [1]
LOIS JEAN ZAUN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zaun v. Commissioner
Docket Nos. 1941-71, 1942-71.
United States Tax Court
T.C. Memo 1975-116; 1975 Tax Ct. Memo LEXIS 256; 34 T.C.M. (CCH) 570; T.C.M. (RIA) 750116; April 29, 1975, Filed. Richard . Zaun and Lois Jean Zaun, pro se. Robert D. Grossman, Jr., for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' income taxes for the taxable year 1964 as follows: Addition to tax
(Sec. 6651(a),
Income tax
I.R.C. 1954) [2]
Richard A. Zaun
$64,674.76
Lois Jean Zaun
6,781.53
$1,695.38
*257 The question for decision is the extent to which petitioners realized long-term capital gain as a result of the condemnation of property in 1964. At all times pertinent, petitioners were husband and wife. Petitioner Richard A. Zaun timely filed his separate individual tax return for 1964. Petitioner Lois Jean Zaun has not filed any return for that year. On November 18, 1963, the Board of County Commissioners of Dade County, Florida, acting as the Dade County Port Authority, passed Resolution No. 9269, which authorized the county to acquire certain parcels of real estate. Subsequently and in implementation of that resolution, the Port Authority acquired three parcels of property in the circumstances indicated below. The first parcel, described as AP-125: S 1/2 N 1/ / /4, less E 35', Sec. 15-55-39, and owned by petitioner Richard A. Zaun individually, [3] was acquired against payment by means of a check in the amount of $223,850 issued in the name of both petitioners. The property included approximately 10 acress of land and nursery stock thereon. The amount of the payment conformed to 110 percent of an appraisal in the aggregate amount of *258 $203,500, of which $27,000 was attributed to the land and $176,500 was attributed to the nursery stock, Exora stock plants, and an irrigation system. Mr. Zaun's cost basis was $8,663.97. The second parcel, described as AP-122: S152.81' of NE 1/ / / /4, less S 35', Sec. 15-55-39, and owned jointly by both petitioners herein, [4] was acquired against payment by means of a check in the amount of $22,605 issued in the name of both petitioners. The property included approximately 1.25 acres of land and nursery stock thereon. The payment conformed to 110 percent of an appraisal in the aggregate amount of $20,550, of which $3,750 was attributed to the land and $16,800 to the nursery stock. Petitiioners' cost basis was $3,108.95. *259 The third parcel, described as AP-110: N 1/2 E 1/2 E 1/ / /4, less W 1/2 of N 2/5 and less Roads, Sec. 15-55-39, and owned by both petitioners herein, [5] was acquired against payment by means of a check in the amount of $77,852.50 issued in the name of both petitioners and endorsed by them to an escrow agent, Columbia Title of Florida, Inc., which, after deducting closing expenses and the amount required to satisfy an existing mortgage encumbrance, issued its check to the order of both petitioners in the amount of $70,848.88. The property included approximately 4 acres of land and nursery stock thereon. The payment of $77,852.50 conformed to 110 percent of an appraisal in the aggregate amount of $70,775, of which $10,400 was allocated to the land and $60,375 to the nursery stock. Petitioners' cost basis was $10,332.50. To his *260 individual return for 1964, petitioner Richard A. Zaun attached a letter stating that he did not "elect to declare the gain from the involuntary sale of my property" and listed all three parcels. Subsequently, petitioner Richard . Zaun sought and obtained successive extensions of time under section 1033 within which to reinvest the proceeds resulting from the condemnation. Each extension was issued in the names of both petitioners, apparently without any objection by either of them. The last extension expired on January 31, 1970. Neither of petitioners has reinvested any of such proceeds. Much of the past history of this case is set forth in our prior opinion ( and in a prior Memorandum Sur Order, dated September 11, 1974, and we see no purpose to be served by repeating it here. At the trial herein, petitioners again raised the question of this Court's jurisdiction, based upon their allegation that the deficiency notices were not sent to the proper address, and, indeed, much of what was to have been a trial on the merits was directed to this question. We have carefully reexamined our prior decision and opinion and have concluded *261 that no basis exists for making any changes therein. The same is true of our Memorandum Sur Order and the order issued thereon. A few substantive points require comment. Petitioners sought at the trial to establish that Mrs. Zaun was not the owner of any of the property involved. As our findings of fact show, we have concluded that petitioners have not carried their burden of proving that respondent's determinations as to ownership were incorrect. ; Rule 142, Rules of Practice and Procedure of this Court. Closely allied to the issue of ownership of the land is petitioners' claim that the condemned land had nursery stock on it which was part of Mr. Zaun's business and therefore should not be treated as belonging to Mrs. Zaun insofar as Parcels AP-110 and AP-122 are concerned, [6] with the result that she should not be taxed on such portion of the condemnation award as was paid for the stock. [7] Assuming, for the purposes of decision, that the appraisers' reports in and of themselves provide a basis for allocating a part of the awards to the nursery stock (neither the appraisers nor any other witnesses testified on this *262 score), petitioners cannot prevail. The land in question was located in Florida and it is clear under Florida law that, at least until severance, trees are considered part of the land. ; see . Moreover, there is no evidence before us from which we could find what portion of the cost basis of the property should properly be allocated to the nursery stock for purposes of computing the gain attributable thereto. Finally, we have no evidence indicating the nature or extent of the "business" claimed to have been operated by Mr. Zaun individually. [8]
*263 In respect of the addition to tax under section 6651(a) determined against Mrs. Zaun, we conclude (and so find) that her failure to file a return and to pay the tax now found to be due was due to reasonable cause and not to willful neglect. One final word. This proceeding has been characterized from its inception by the insistence of petitioners upon dealing with issues not germane to the question before us and by their consistent reluctance, if not refusal, to deal with the necessity of producing probative substantive evidence as to their liability for the deficiencies determined by respondent. Despite their asserted health problems, the lengthy and detailed papers which they have filed with the Court reveal their capacity to ferret out and bring to our attention a myriad of legal and factual matters, albeit that most of it was not material to the issues which we were required to decide. Similarly, as to their asserted inability to obtain counsel (as to which few, if any, details regarding their efforts were submitted), the record herein clearly indicates petitioners' ability to grasp and cope with legal and factual issues when they were of a mind to do so. As we pointed out in *264 our Memorandum Sur Order -- [this] Court deals with many cases in which the taxpayer represents himself and in which problems more complicated than those involved herein are involved. This is not to say that this Court likes to deal with cases without the benefit of counsel for the taxpayer. We would much prefer taxpayers to have legal representation. But the inability to obtain counsel should not be used unduly to prolong the disposition of matters before the Court. We see no constitutional basis for petitioners' right to be represented by counsel herein; such right in civil cases "has been severely restricted, perhaps to the point of nonexistence." See , and cases cited therein. We are satisfied that we have given petitioners a full and adequate opportunity to present the necessary evidence to sustain their assertion that no taxes are due in respect of the proceeds stemming from the condemnation. Since they have not done so, we must sustain respondent's determination except insofar as concerns the addition to tax under section 6651(a) determined against Mrs. Zaun. Decision will be entered of a deficiency *265 in income tax for the taxable year 1964 of $64,674.76 against Richard A. Zaun in Docket No. 1941-71.
Decision will be entered of a deficiency in income tax for the taxable year 1964 of $6,781.53 against Lois Jean Zaun in Docket No. 1942-71.
Footnotes
1. These cases were consolidated by the granting of respondent's motion on December 11, 1972.↩
2. All references are to the Internal Revenue Code of 1954 as amended and in effect at the times pertinent to this proceeding.↩
3. See warranty deed recorded on October 4, 1965, covering the sale of this parcel by Remley Real Estate and Investment Company, Inc., to Richard A. Zaun.↩
4. Respondent determined that this parcel was owned by both petitioners. Petitioners submitted two ex parte affidavits indicating that the purchase of the parcel was by petitioner Richard A. Zaun individually, but, in light of the other indications in the record, the hearsay nature of the affidavits, and the failure of petitioners to submit any deed or other title document, we do not think they have carried their burden of proof.↩
5. See warranty deed dated May 12, 1958 covering the sale of this parcel by WILLIAM DAVIS, also known as WILLIAM M. DAVIS, and ANNIE J. DAVIS, his wife, to "RICHARD A. ZAUN and LOIS JEAN ZAUN, his wife." Petitioners claimed they had evidence to contradict this designation of ownership but it was never submitted.↩
6. No part of the gain attributable to Parcel AP-125 was attributable to her, so that the issue does not arise as to this parcel. ↩
7. One cannot help but wonder why such an assertion is made, since if it were sustained, it would appear that the effect would be to increase the total taxes payable, since Mr. Zaun is subject to a higher tax bracket than Mrs. Zaun. ↩
8. Such absence of evidence also precludes us from considering the extent to which any taxable gain resulting from the condemnation might be offset by net operating losses in other years.↩